IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

**FILED**

**DOCKETED**

FEB 2 7 2002

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA
BY_____ DEPUTY

CHRISTOPHER TODD WILLIAMS,      )
                                )
                    Petitioner, )
                                )
          vs.                   )      No. CIV-98-1714-T
                                )
GARY GIBSON,                    )
                                )
                    Respondent. )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter is back before this Court following a remand by the United States Court of Appeals for the Tenth Circuit.[1]  Pursuant to an order entered by United States District Judge Ralph G. Thompson, the matter has been re-referred to the undersigned Magistrate Judge for further proceedings consistent with 28 U.S.C. §636(b)(1)(B).  Respondent has filed a response and the state court trial transcripts.  Although granted time in which to file a reply, Petitioner has failed to do so.  Thus, the case is at issue.  For the reasons set forth herein, the undersigned recommends the petition be denied.

### Procedural Background

Petitioner, a state prisoner appearing through counsel, filed this action pursuant to 28 U.S.C. §2254, challenging his conviction in Oklahoma County District Court, Case No.

---

[1]Petitioner appealed this Court's order dismissing the petition as untimely filed under 28 U.S.C. §2244(d).  The Tenth Circuit found that the petition was timely and remanded the matter to this Court for further disposition on the merits. The Tenth Circuit held that Petitioner's habeas petition was timely because the OCCA had denied his appeal from the denial of state post-conviction relief pursuant to a procedural bar rather than a jurisdictional bar, and therefore his appeal was "properly filed" within the meaning of 28 U.S.C. §2244(d)(2), thereby tolling the one-year limitation period in 28 U.S.C. §2244(d). See Williams v. Gibson, 229 F.3d 1310 (10th Cir. 2000); see also Doc. No. 32.  Respondent petitioned for a rehearing and rehearing en banc. The Circuit Court granted Respondent's petition for rehearing in order to modify the Court's earlier rationale to conform with the OCCA's interpretation of Rule 5.2(C) in Weatherford v. State, 13 P.3d 987, 988 n.1 (Okla. Crim. App. 2000) as a jurisdictional requirement. Williams v. Gibson, 237 F.3d 1267, 1268 (10th Cir. 2001); see also Doc. No. 36.  The Court denied the petition for rehearing in all other respects. Id.



CRF-93-6982, in which a jury found Petitioner guilty of two counts of first degree murder and one count of possession of a firearm by a convicted felon.[2]  Pursuant to the jury's recommendation the trial court sentenced Petitioner to two terms of life imprisonment without the possibility of parole on the murder convictions and one hundred thirty-five years imprisonment on the firearms conviction.  The trial court ordered that the sentences be served consecutively.  See Response, Ex. D, Williams v. State, Case No. F-95-763. Petitioner brought a direct appeal, raising ten issues, including the issues raised herein. His convictions and sentences were affirmed by the OCCA on April 16, 1997, and his petition for writ of certiorari was denied.  Id.  Petitioner brought an application for post-conviction relief, which was denied by the district court.[3]  Petitioner appealed the denial, but the appeal was dismissed by the OCCA for failure to comply with OCCA Rule 5.2(C)(requiring that a petition in error, with a brief, be filed within the time provided). Response, Ex. E, Case No. PC-98-1068.

---

[2]Petitioner was charged jointly in the first degree murder counts with codefendant Marcus Cargle. Mr. Cargle was convicted at a separate trial and was sentenced to death for the murders.  In a published opinion dated December 22, 1995, the Oklahoma Court of Criminal Appeals (OCCA) affirmed Cargle's conviction and death sentence.  See Cargle v. State, 909 P.2d 806 (Okla. Crim. App. 1995), cert. denied, 519 U.S. 831 (1996).

The State sought the death penalty on the murder charges in Petitioner's case and the jury was instructed on this option at sentencing. However, the jury recommended that Petitioner receive life without parole.

[3]Neither party has provided the Court with a copy of Petitioner's application for post-conviction relief or the district court's denial.  However, Petitioner states that the application "raised the identical issues that were raised on direct appeal" and was denied by the district court.  Petitioner's Brief in Support of Petition for Writ of Habeas Corpus (Petitioner's Brief) at 2.

Petitioner raises two grounds for habeas relief.[4] Petitioner alleges that the improper admission of evidence of his prior felony conviction for second degree murder violated his right to due process and a fair trial.   Petitioner also alleges that the OCCA gave inadequate consideration to his claim on direct appeal that based on the post-trial recantation of testimony by State's witness Mark Gaddis there was insufficient evidence to support his convictions.

Respondent asserts that the OCCA's determination that the admission of Petitioner's prior convictions for second degree murder was harmless error under state law does not merit habeas relief because the evidence did not have a substantial injurious effect on the verdict.  With respect to Petitioner's second claim, Respondent contends that the OCCA's determination that witness Gaddis' recantation would have not changed the verdict in this case was not contrary to or an unreasonable application of Supreme Court law.

## Factual Background

Petitioner was convicted for the murders of Richard and Sharon Paisley, who were found shot to death at their home in Oklahoma County on September 25, 1993.  The basic facts concerning the murders are summarized by the OCCA in the direct appeal of Petitioner's codefendant, Marcus Cargle, in Cargle v. State, 909 P.2d 806 (Okla. Crim. App. 1995) and adopted by the OCCA in Petitioner's direct appeal.  See Response, Ex.

---

[4]In an earlier Report and Recommendation, the undersigned found that Petitioner's habeas claims were limited to the two claims addressed in his Brief in Support of Petitioner for Writ of Habeas Corpus" [Doc. No.14], and that Petitioner had abandoned the other unsupported claims in his original petition. See Report and Recommendation dated September 21, 1999, at 2 n.1.  In his objection, Petitioner agreed that "the issues presented in the brief are the issues to be addressed by the Court."  Petitioner Objections to Magistrate's Recommendation at 1 and 10.

D at 1.  These historical facts, as quoted hereafter, are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

> The Paisleys' neighbor last saw Richard alive on September 24, 1993, when
> he came to the neighbor's house to borrow money.   He said he needed
> $200 to save a trip into town, and he would repay the loan the next day.
> Richard offered the neighbor, Larry Dhooge, a couple of checks as
> collateral; Dhooge refused the offer, and loaned Paisley the $200.  Dhooge
> sent his sons to the house the next day, a Saturday, to collect on the debt
> and to give the Paisleys a package addressed to them which had been
> delivered to the Dhooge house.  The two boys found the bodies:  Sharon
> was lying on the floor in the living room, Richard was lying in the doorway to
> the bedroom.  Each had been shot in the head, and Richard had also been
> shot in the chest.  The Dhooges recalled the Paisleys' lights were on and the
> television was off when they returned to their house between 11 and 11:30
> p.m. Friday; usually, the lights were off and the television was on at that
> time.

Cargle, 909 P.2d at 812.

At Petitioner's trial in June of 1995 the State presented evidence which included

testimony by two key witnesses: Christopher Todd Jackson and Mark Anthony Gaddis.

Christopher Todd Jackson, an eyewitness to the crimes, testified under an immunity

agreement which was admitted into evidence.[5]  Tr.Vol.V at 84.  Jackson testified that on

the evening of September 24, 1993, he encountered Marcus Cargle and Petitioner

(referred to by Jackson as "Todd" Williams) at the home of Marcus' uncle, "Red" Cargle,

and Jackson asked Petitioner and Cargle for a ride to his daughter's home.  Tr.Vol.V at 65-

66.  Petitioner and Cargle agreed but told Jackson they had to make a stop first "to get

some money."[6]  Tr.Vol.V at 67.  The three men left in Petitioner's vehicle, arrived at the

---

[5]Although the immunity agreement is not a part of the record before the Court, Jackson testified that
he had been granted immunity in exchange for truthful testimony.  Tr.Vol.V at 84-85 (referring to State's
Exhibit No. 60).

[6]According to the testimony of Angela Harris and Dwana Cargle, codefendant Cargle went to the
Paisleys' home the evening of September 24 because he had purchased some "bad" marijuana from the
Paisleys' earlier that day.  Tr.Vol.VII at 39; Tr.Vol.VII at 67.

Paisleys' house at approximately 8:30 or 9:00 p.m. and went inside. Tr.Vol.V at 66-68. Jackson accepted Mrs. Paisley's offer of a beer, and watched television with her, while Marcus Cargle and Petitioner were talking with Richard Paisley in another room. Tr.Vol.V at 68. Jackson heard Richard say he did not want any trouble and that he would go to a neighbor's house to borrow money and would be right back. Tr.Vol.V at 69. Richard left and returned in about 20 minutes with $200.00. Id. He gave Cargle one hundred dollars and told him not to worry, that he (Paisley) would get his money back "from that guy." Id. Jackson started for the door and Cargle announced he was coming, too. Tr.Vol.V at 73-74. Jackson testified that as he was standing near the door, Petitioner came out of the bathroom in the back of the house carrying a Tech-9 semiautomatic pistol and shot Richard in the chest, then the neck. Tr.Vol.V at 77, 74. By the second shot, Sharon Paisley had left her seat on the couch and was on the floor. Tr.Vol.V at 75. After Petitioner fired his second shot at Richard, Cargle said "damn," jumped up, ran to where Sharon was and fired a .22 pistol at her head. Tr.Vol.V at 74-75. After the first shot, the weapon jammed. Tr.Vol.V at 75. Petitioner then shot Richard a third time in the back of the head. Id. By that time, Cargle had unjammed his pistol and fired a second shot into Sharon's head. Id.[7]

Jackson testified that after the shooting Cargle "scrambled around on the floor" and that   Petitioner wiped off his fingerprints. Tr.Vol.V at 77-78. Jackson testified that he wiped his fingerprints from the doorknob and an ice chest before leaving. Tr.Vol.V at 78.

---

[7]The facts set forth in Cargle also show that Petitioner's codefendant, Marcus Cargle, confessed to informant Luke Jones that he had killed a man and woman in northeastern Oklahoma County. Cargle, 909 P.2d at 812. Specifically, Cargle told Jones that he shot the woman (Mrs. Paisley) and "Todd," later identified at Cargle's trial as Petitioner, shot the man (Mr. Paisley). Id. In Cargle, the OCCA stated that upon arrest Cargle "admitted being at the scene but denied killing anyone, blaming both murders on [Petitioner]." Id.

Jackson testified that Petitioner carried the Paisleys' television and VCR to his car. Id. When the three men were in the car, Petitioner asked Cargle and Jackson what they had seen. Tr.Vol.V at 78-79. The two men said they had seen nothing and Petitioner replied "Good, we ought to keep it that way." Tr.Vol.V at 79. Petitioner dropped off Jackson at his home, where he lived with his mother, and Jackson immediately told his mother what had happened.[8] Tr.Vol.V at 80.

The medical examiner testified that Richard Paisley had been shot once in the chest and twice in the head with a nine millimeter handgun. Tr.Vol.IV at 53-54. With respect to Sharon Paisley, the medical examiner found only one entry and exit wound to the head. Tr.Vol.IV at 69-71. A firearms examiner opined that Mrs. Paisley had been shot twice in the same place because the weight of the bullet fragments recovered exceeded the weight of a single .22 caliber bullet. Tr.Vol.V at 8.

In addition to Jackson's eyewitness testimony, the State presented the testimony of informant Mark Gaddis. Gaddis testified that he had negotiated an agreement with the State providing for the disposition of certain criminal charges pending against him in four separate and unrelated Oklahoma County cases in exchange for his truthful testimony in the case against Petitioner.[9] Tr.Vol.VI at 65-66. Gaddis testified that in November of 1993 he furnished the police with information about the case which he had obtained from

---

[8] Mrs. Gwendolyn Jackson confirmed that her son had told her he had been with two buddies, that they had stopped by someone's house, and that a man and a woman had been shot. He told her that "Marcus" shot one and "Todd" shot the other. Tr. Vol.V at 168-169.

[9] According to Gaddis, the agreement which had not yet been formalized provided that in exchange for his truthful testimony in this case, the District Attorney's office would drop certain charges and agree to recommend two terms of life in prison upon his plea of guilty to the remaining charges of first degree murder and distribution of controlled dangerous substance, after former conviction of a felony. Tr.Vol.VI at 66. The agreement further provided that Gaddis would be incarcerated out of state, based on his fear of Petitioner. Tr.Vol.VI at 66, 72.

Cargle.  Tr. Vol. VI at 70.  Based on this information, arrest warrants were issued for Jackson, Petitioner and Marcus Cargle.  Tr.Vol.VI at 69.  Gaddis testified that he had known Petitioner for approximately four to five years, that he had in the past seen Petitioner with nine-millimeter weapons, and that Petitioner always kept a "Tech-9" weapon in his vehicle.  Tr.Vol.VI at 67-68.  Gaddis further testified that in October or November of 1993, Petitioner had asked Gaddis for money, stating that he needed to get out of town because Cargle had been arrested and the police knew about the shooting.[10]  Tr.Vol.VI at 68.  Gaddis testified that he gave Petitioner about $200.00 because Petitioner was going to take it if he didn't give it to him.  Id.  He also testified that he was afraid of Petitioner.  Id.

Gaddis also testified that he was subsequently incarcerated at the Oklahoma County jail, and in June of 1995 Petitioner was placed in the same pod and made several statements regarding the Paisley murders to him.  Tr.Vol.V at 69.  Specifically, Gaddis testified that Petitioner stated: "When I shot that m-----f----- in the head, didn't nobody know until Marcus [Cargle] came to jail and told."  Tr.Vol.V at 69.  Petitioner also told Gaddis that he was going to get Angel Harris to testify that Cargle and Jackson had committed the murders and that he would also get Dwana Cargle to testify for him.  Tr.Vol.V at 70-71.  Finally, Gaddis testified that Petitioner stated that if he beat the case, he was going to kill Jackson when he got out.  Tr.Vol.V at 71.

Petitioner's mother, his sister, and Candace Ware, testified in support of his alibi defense that at the approximate time of the Paisley murders, Petitioner and his sister and

---

[10]Oklahoma City Detective Randy Scott's testimony confirmed that in October of 1993 Gaddis had informed him that Petitioner was getting ready to flee to California because Cargle had been arrested and had implicated Petitioner in the Paisleys' murders.  Tr.Vol.VI at 126.

Candace Ware were enroute to Ms. Ware's home in Del City and then to the northwest side of Oklahoma City to pick up Petitioner's mother from work. Tr.Vol.VI at 205, 227-28; Tr.Vol.VII at 8-11.

Analysis

I.     Claim Two - "Mr. Williams is Entitled to Habeas Corpus Relief Because Key Evidence Has Now Been Discredited Due to the Recantation of Mark Gaddis; At Minimum, the Court Should Order an Evidentiary Hearing."

Petitioner claimed on direct appeal and in a separately filed motion for new trial in state court that the evidence of his participation in the crimes was legally and factually insufficient because jail informant Mark Gaddis recanted his testimony after trial.[11] Noting that the jury was given an accomplice instruction with respect to Chris Jackson's testimony, Petitioner alleged that as a result of Gaddis' recantation, Jackson's testimony as an accomplice was uncorroborated. Thus, Petitioner asserted, the evidence (absent the recanted testimony of Gaddis and the uncorroborated testimony of Jackson) was insufficient to identify him as a perpetrator of the Paisley murders and to support his conviction. In his state appeal Petitioner also submitted a notarized written but unsworn

---

[11]In a sworn written statement dated August 3, 1995, Gaddis stated that "Chris" Jackson came to his home and they discussed the murders that "him and Marcus Cargle had done." According to Gaddis, Jackson later returned to his house and they decided that Petitioner should be blamed for the Paisley murders, because Petitioner was "messing with" Jackson's girlfriend. Gaddis also stated that he and Detective Scott "got together and blamed it on [Petitioner]." He further alleged that "D.A. Fern Smith came to me and wanted me to blame it all on [Petitioner]." According to Petitioner, Ms. Smith told him that the prosecutor did not have a case against Petitioner without his testimony, told him what to say about the murders, and threatened him with additional charges if he did not testify against Petitioner. He stated that Petitioner had not made the statements Gaddis had attributed to him while the two men were in jail together. Gaddis said "they made me say it." He also stated he wanted to place the blame on Petitioner because "I didn't like him." Response, Ex. A, attached "Exhibit A."

On August 23, 1995, Petitioner's defense counsel and two defense investigators interviewed Gaddis at the Lexington prison facility, and Gaddis essentially reiterated his August 3 statements that he had lied at Petitioner's trial and that Petitioner was not involved with the Paisley murders. Response, Ex. C, attached "Exhibit B." At the conclusion of the interview, Gaddis admitted that he could not point to any facts or evidence that would support his recantation. Id. at 37-40. Additionally, he revealed that he wrote the August 3, 1995, statement recanting his trial testimony against Petitioner after he encountered Petitioner in the same prison facility. Id. at 41.

statement by codefendant Cargle exonerating Petitioner and admitting that Cargle participated with other named individuals in a plan to implicate Petitioner in the murders.[12] Petitioner requested a new trial, or alternatively, an evidentiary hearing.

In considering Petitioner's claim on direct appeal, the OCCA noted that under Oklahoma law, "[a] motion for new trial on newly discovered evidence is not sufficient where it only tends to discredit or impeach the witness for the State and where it would not change the result of the trial."  Response, Ex. D. at 7-8.  The Court then ruled as follows:

> [W]e are not convinced that the statements in the affidavits are true. At trial Gaddis swore that [Petitioner] admitted shooting Mr. Paisley.  Now he has recanted this.  Either he lied at trial or he is lying now.  "We are unwilling to engage in a leap of faith as to which truth to believe."  Cooper [ v. State, 584 P.2d 234], at 237 [(Okla. Crim. App. 1978)].  Because we are not persuaded of the veracity of Gaddis' affidavit, [Petitioner's] Motion for New Trial is overruled.

Response, Ex. D at 8.  The OCCA further concluded that "there was sufficient evidence apart from Gaddis' testimony to convict [Petitioner] of murdering the Paisleys," the testimony of Christopher Todd Jackson in particular.  Id. at 9.  The Court then separately addressed Petitioner's claim of insufficient evidence.[13]

---

[12]In his unsworn statement notarized on May 5, 1994, Cargle stated that on September 24, 1993, he witnessed the Paisleys "being shot to death by Christopher Todd Jackson and Robert Davis, who has since fled the state of Oklahoma."  Cargle denied his participation in the shootings but stated he was a part of a plan to accuse Petitioner of the crimes. He described that plan as follows: "The initial plan and agreement of the people involved at first was that anyone [] questioned as a suspect of these crimes [] would say that Christopher Todd Williams committed these crimes, just as I did in my statement to the detectives from the Oklahoma City Policy Department." Response, Ex. A, attached "Exhibit C." Cargle stated that subsequently Jackson decided to implicate him (Cargle) as one of the shooters.  According to this subsequent statement by Cargle, "[Petitioner] had nothing to do with these crimes and was nowhere around when they were committed."  Id.

[13]The undersigned notes that because Gaddis recanted his testimony regarding Petitioner's post-arrest statements made to him, the OCCA's use of Gaddis' testimony as "independent" evidence supporting Jackson's testimony is obviously inconsistent with the Court's review of Petitioner's insufficient evidence claim "apart from Gaddis' testimony."  Response, Ex. D at 9.

As to Petitioner's characterization of Jackson's testimony as that of an uncorroborated accomplice, the OCCA found that the record did not establish whether the jury found Jackson to be an accomplice.  Response, Ex. D at 10.[14]  That Court found that "[Jackson's] testimony that he did not know the shootings were to take place and his lack of participation in the shootings indicated that he was not an accomplice."  Id.  Moreover, the Court concluded that even if Jackson were an accomplice, there was sufficient evidence of Petitioner's connection to the murders to corroborate Jackson's testimony, specifically, Petitioner's "post-arrest statements to Gaddis and his flight from Oklahoma after co-defendant Cargle was arrested, with the knowledge that there was an arrest warrant out for him."  Id.  Citing Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), the Court held that there was sufficient evidence for the jury to conclude that Petitioner committed the crimes of murder and felon in possession of firearm.  Id.

A.  Challenge to Adequacy of Review by the State Appellate Court

Petitioner, who is represented by counsel, frames his claim as a challenge to the adequacy of the consideration made by the OCCA regarding the recantation of Gaddis' testimony and that court's ruling under state law on Petitioner's motion for new trial.  He alleges that the OCCA should have ordered an evidentiary hearing and its failure to do so requires an evidentiary hearing by this Court.

In essence, Petitioner appears to be asking this Court to review and overturn the OCCA's decision regarding Petitioner's motion for new trial.  To this extent, Petitioner

---

[14]The Court noted that the jury was instructed to determine "whether Jackson was an accomplice to the murders," that "the uncorroborated testimony of an accomplice could not be used to convict the [Petitioner]," and that "if Jackson was found to be an accomplice, then it could not convict [Petitioner] on Jackson's testimony unless it also found corroborating testimony tending to connect [Petitioner] to the crime." Response, Ex. D at 10.

misapprehends the purpose of federal habeas corpus action and the power of this Court over decisions of a state court. Federal courts do not sit as "super appellate" courts to reconsider state court decisions. See Robinson v. State of Oklahoma, 404 F.Supp. 1168, 1170 (W.D. Okla. 1975)("Habeas corpus in the federal court does not serve as an additional appeal from state court convictions."). Rather, federal habeas corpus relief exists only to remedy violations of a petitioner's constitutional rights. See 28 U.S.C. §2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Van Woudenberg v. Gibson, 211 F.3d 560, 572 (10th Cir. 2000)(citing Rose v. Hodges, 423 U.S. 19 (1976)). Petitioner's challenge to the adequacy of the OCCA's determination of a state law issue does not raise an issue for habeas review.

B. Evidentiary Hearing

Citing Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998), cert. denied, __ S.Ct.__, 2002 WL 233232 (Feb. 19, 2002), Petitioner requests an evidentiary hearing in this Court to determine whether his alleged "newly discovered evidence" in the form of recanted trial testimony entitles him to a new trial. However, because the record reflects that Petitioner attempted to develop the factual basis of his claim in state court, the provisions of 28 U.S.C. §2254(e)(2) do not apply.[15] Miller, 161 F.3d at 1253 (holding AEDPA's restriction on evidentiary hearings does not apply where a habeas petitioner has "diligently sought to develop the factual basis underlying his habeas petition, but a state court has prevented

---

[15] Section 2254(e)(2) provides:
(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
    (A) the claim relies on-
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;....

him from doing so"). Rather, Petitioner is entitled to an evidentiary hearing only if he can show that "his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." Id.; see also Boyd v. Ward, 179 F.3d 904, 925 (10th Cir. 1999), cert. denied, 528 U.S. 1167 (2000). As further discussed hereafter, the record before the Court shows that Petitioner's allegations which essentially attack the sufficiency of the evidence against him do not entitle him to habeas relief.[16] Accordingly, Petitioner is not entitled to an evidentiary hearing.[17] Miller, 161 F.3d at 1253; see also Trice v. Ward,

---

[16]Petitioner argues that he is entitled to an evidentiary hearing on the recantation of Mark Gaddis because the OCCA's findings regarding the "credibility" of Gaddis' recantation are not entitled to a presumption of correctness. Petitioner's Brief at 18. However, in Silver v. Hargett, No. 95-7146, 1996 WL 494306 (10th Cir. Aug. 30, 1996), the Tenth Circuit considered a similar claim that recanted testimony constituted newly discovered evidence requiring an evidentiary hearing. Citing Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989), the Circuit Court stated that "[t]he credibility of a witness is an issue of fact." Id. The Court held in that case that the findings of the state courts regarding the credibility of the recanted testimony were presumed correct under 28 U.S.C. §2254(e)(1) and found that the petitioner had "offer[ed] no evidence to the contrary that either implicates the constitutionality of his conviction or suggests that the matter in his petition did not receive a full and fair hearing in state court." Id. (This and other unpublished dispositions cited herein are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.). See also Smith v. Gibson, 197 F.3d 454, 459 (10th Cir. 1999)(deferring to OCCA's implicit credibility determination regarding petitioner's claim that witness gave false testimony at trial), cert. denied, 531 U.S. 839 (2000); Church v. Sullivan, 942 F.2d 1501, 1516 (10th Cir.1991)(treating "a state court finding regarding witness credibility as a finding of fact").

In the instant case, Petitioner developed the factual basis of his claim regarding recanted testimony in the state court and presented the OCCA with affidavits containing the alleged recanted testimony by Gaddis and Cargle's statement. In its opinion affirming Petitioner's convictions, the OCCA implicitly found the recanted testimony was not credible and thus did not support his claim for new trial. Given the availability on direct appeal of the trial transcripts of Gaddis' sworn testimony, which was subject to cross-examination, and the affidavit and interview of Gaddis regarding his recantation, Petitioner fails to show that he did not receive a full and fair hearing on the issue. See generally Sumner v. Mata, 449 U.S. 539, 546-47 (1981)(a "hearing" as used in Section 2254(d) (pre-AEDPA) does not necessarily mean an evidentiary hearing; a "hearing on the merits of a factual issue" requires that the habeas applicant and the State or its agent be parties to the state proceeding and that the state court determination be evidenced by "a written finding, written opinion, or other reliable and adequate written indicia"). Thus, the OCCA's implicit factual finding that Gaddis' recantation was not credible should be presumed correct.

In any event, the question of whether the OCCA's conclusion regarding Gaddis' statements for purposes of Petitioner's new trial motion may be considered presumptively correct under §2254(e)(1) is not dispositive of Petitioner's request for an evidentiary hearing, as a review of the entire record, discussed infra, reveals that Petitioner fails to show that his allegations regarding Gaddis' recantation would entitle him to habeas relief.

[17]Moreover, the Tenth Circuit has found that even assuming a petitioner sought to develop the factual basis of a claim in state court, where the petitioner makes only a general request for an evidentiary hearing, such request should be denied. Boyd v. Ward, 179 F.3d 904, 924-25 (10th Cir. 1999). As in Boyd, Petitioner makes a general request for an evidentiary hearing and fails to indicate what facts, if any, he would prove through a hearing and what effect such facts would have on his claims. His request for an evidentiary

196 F.3d 1151, 1159 (10th Cir. 1999)(petitioner not entitled to evidentiary hearing under pre-AEDPA standard because his ineffective assistance of counsel claim could be fully resolved on the record before the court), cert. denied, 531 U.S. 835 (2000); Berget v. Gibson, No. 98-6831, 1999 WL 586986 (10th Cir. Aug. 5, 1999)(petitioner not entitled to evidentiary hearing under pre-AEDPA standard because "[h]is allegations, taken as true, still would not entitle him to habeas relief"), cert. denied, 529 U.S. 1042 (2000).

    C. Sufficiency of the Evidence

    On direct appeal Petitioner maintained that the evidence connecting him to the homicides was insufficient because the only witnesses identifying him as one of the killers had either recanted their testimony (Gaddis), or provided uncorroborated testimony (Jackson).  As discussed above, the OCCA determined that Gaddis' affidavit purporting to recant his trial testimony did not entitle Petitioner to a new trial.  In addition, the Court held that there was sufficient evidence to sustain Petitioner's convictions.  Thus, to the extent Petitioner asserts an insufficiency of the evidence claim based on Gaddis' recanted trial testimony, the OCCA considered such claim on direct appeal and found it to be without merit.

    Under the AEDPA , Petitioner may not be granted habeas relief on his insufficient evidence claim unless the state court's adjudication of this claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

hearing is subject to denial on this basis alone.

the State court proceedings." 28 U.S.C. §2254(d)(1) and (2).[18] Whether an application

of the law is "unreasonable" is determined by an objective standard of reasonableness.

Williams v. Taylor, 529 U.S. 362, 409-10 (2000). See Thomas v. Gibson, 218 F.3d 1213,

1219-20 (10th Cir. 2000) (reiterating the standard of review set out in §2254 and Williams

v. Taylor). Additionally, the state court's findings of fact are presumed correct absent clear

and convincing evidence to the contrary. See §2254(e)(1);[19] Hale v. Gibson, 227 F.3d

1298, 1335 n.17 (10th Cir. 2000), cert. denied, 121 S.Ct. 2608 (2001).

"[A]n essential of the due process guaranteed by the Fourteenth Amendment [is]

that no person shall be made to suffer the onus of a criminal conviction except upon

sufficient proof—defined as evidence necessary to convince a trier of fact beyond a

reasonable doubt of the existence of every element of the offense." Jackson v. Virginia,

443 U.S. 307, 316 (1979). Therefore, this Court reviews the record to determine "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt."

Id. at 319; see also Romano v. Gibson, 239 F.3d 1156, 1164 (10th Cir.), cert. denied, 122

S.Ct. 624 (2001). "Such review is 'sharply limited' and a court 'faced with a record of

historical facts that supports conflicting inferences must presume even if it does not

---

[18]With respect to a sufficiency of the evidence claim, there is precedent in the Tenth Circuit that a sufficiency of the evidence challenge is a legal determination under §2254(d)(1), requiring review of whether the state court's decision was contrary to or an unreasonable application of the "rational factfinder" standard, and other precedent suggesting it is a factual determination under §2254(d)(2) and (e)(1), requiring a review of whether the state court's decision was an unreasonable determination of the facts. See Moore v. Gibson, 195 F.3d 1152, 1176 (10th Cir. 1999)(citing and collecting cases), cert. denied, 530 U.S. 1208 (2000). However, the Tenth Circuit has determined that it is not necessary to determine which standard of review is appropriate when, as in the instant case, the petitioner's claims are clearly meritless "under either of these highly deferential standards...." Fields v. Gibson, 277 F.3d 1203, 1221 (10th Cir. 2002).

[19]This presumption of correctness does not apply to a question of law or to an ultimate mixed question of law and fact. See Herrera v. LeMaster, 225 F.3d 1176, 1178-79 (10th Cir. 2000) (citing Williams, 120 S.Ct. at 1519-22).

affirmatively appear in the record that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Wright v. West, 505 U.S. 277, 296-97 (1992)).  In applying this standard, the Tenth Circuit has held that the Court may not weigh conflicting evidence or consider the credibility of witnesses.  Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).

In reviewing Petitioner's sufficiency of the evidence claim, the OCCA relied upon its previous decision in Spuehler v. State, 709 P.2d 202 (Okla. Crim. App. 1985), in which the state appellate court applied the Jackson standard.  Spuehler, 709 P.2d at 203-04.  Therefore, Petitioner has not shown that the state court used a legal standard that was "contrary to or an unreasonable application of clearly established Supreme Court precedent" under 28 U.S.C. §2254(d)(1).  Accordingly, in order to obtain relief on an insufficiency of the evidence claim, Petitioner must show that the OCCA unreasonably applied the Jackson standard to the facts of this particular case.  See Williams v. Taylor, 529 U.S. at 413; 28 U.S.C. §2254(d)(2).

Under Oklahoma law, see Jackson, 443 U.S. at 324 n.16, "'[a] person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being.'" Bland v. State, 4 P.3d 702, 713 (Okla. Crim. App. 2000)(emphasis omitted)(quoting Okla. Stat. tit. 21, §701.7(A)), cert. denied, 531 U.S. 1099 (2001).  Further, to be convicted as a principal, a defendant must either have committed the crimes or have aided and abetted them by procuring, aiding, assisting, advising, or encouraging their commission, by gestures, words, or acts, and only slight participation is needed to change a person's status from mere spectator to aider and

abettor.  Cannon v. State, 904 P.2d 89, 100 (Okla. Crim. App. 1995), cert. denied, 516 U.S. 1176 (1996).

Petitioner argued on direct appeal that because Gaddis had recanted his testimony, Jackson's uncorroborated testimony as an accomplice was insufficient to sustain his convictions.  The OCCA found no indication in the record that the jury found Jackson an accomplice.[20]  Even assuming as argued by Petitioner, that the jury found Jackson an accomplice thus requiring corroborating evidence, any claim by Petitioner that his constitutional rights were violated based on inadequate corroboration of accomplice testimony fails.  Oklahoma law requires that the testimony of an accomplice be corroborated in at least one material fact.  See Moore v. Reynolds, 153 F.3d 1086, 1106 (10th Cir. 1998).  The federal constitution, however, "does not prohibit convictions based primarily on accomplice testimony."  Scrivner v. Tansy, 68 F.3d 1234, 1239 (10th Cir. 1995), cert. denied, 516 U.S. 1178 (1996); see also Johnson v. Turner, 429 F.2d 1152, 1155 (10th Cir. 1970)(claim that uncorroborated testimony of an accomplice is insufficient to support a conviction is not cognizable in habeas corpus).

In any event, the following evidence viewed in the light most favorable to the State, see Jackson, 443 U.S. at 319, tends to corroborate Jackson's testimony.  First, while there was some inconsistency regarding certain aspects of the crime scene, the material facts of Jackson's account of the shooting at Paisleys' home were corroborated by evidence

---

[20]Further, the undersigned takes judicial notice that in the published opinion affirming co-defendant Cargle's conviction for the Paisleys' murders, the OCCA specifically found "no evidence to support" Cargle's assertion that Jackson was an accomplice, noting that Cargle "did not implicate Jackson in the murder, although he had the opportunity to do so."  Cargle, 909 P.2d at 822 n.11.

found at the Paisley residence.[21]  Secondly, police detective Ron Mitchell testified that Jackson's description of how Mr. Paisley was shot was consistent with Cargle's previous statements to Mitchell. Tr.Vol.V at 220.  Evidence was also presented that earlier in the day of September 24, 1993, four black men, including a man with a bald or shaved head, which matched witnesses' description of Petitioner's appearance at the time of the murders, were seen standing outside Paisleys' home.  Tr.Vol.III at 195; Tr.Vol.V at 85; Tr.Vol.VII at 51-52.  In addition, Belinda Whiteman, a rebuttal witness presented by the State, testified that she was dating Marcus Cargle in September of 1993, and had seen a gun such as one previously identified as a Tech-9 pistol in Petitioner's car during this time period.  Tr.Vol.VII at 138 (referring to Defendant's Exhibit 12, admitted in Tr.Vol.V at 36).

Finally, in addition to the evidence corroborating Jackson's testimony, evidence was presented of Petitioner's flight, specifically, that after codefendant Cargle's arrest, Petitioner left the state of Oklahoma knowing that authorities were looking for him in regard to the Paisley murders.[22]

---

[21]Evidence corroborating Jackson's accounts of the shooting at the Paisley home included the following: (1) the fatal wounds Mr. and Mrs. Paisley received were materially consistent Jackson's version, Tr.Vol.IV at 45-74; (2) three .9 millimeter and two .22 casings were found at the residence, Tr. Vol.IV at 7, 148; (3) no finger prints were found at the scene, (4) $100.00 was found in Mr. Paisley's billfold, Tr.Vol.V at 203; (5) the time of killings according to Jackson was consistent with Mr. Dhooge's testimony regarding the timing of Mr. Paisley's visit to borrow $200.00, Tr.Vol.III at 233; (6) a television and VCR were missing from the Paisley's residence, Tr.Vol.V at 189; and (7) an ice chest as Jackson referred to was in the living room of the Paisley residence, Tr.Vol.V at 177.

[22]Under Oklahoma law the jury may consider flight as evidence of guilt. <u>Mitchell v. State</u>, 876 P.2d 682 (Okla. Crim. App. 1993), corrected in 887 P.2d 335 (Okla. Crim. App. 1994).  Detective Scott testified that in October of 1993 Gaddis had reported to him that Petitioner was getting ready to run to California because things had gotten too hot since Cargle was arrested.  Tr.Vol.VI at 126.  Petitioner's sister, Ferries Johnson, testified that after the shootings Petitioner had called her from somewhere out of town, and she had informed him that the authorities were looking for him in relation to the murders and that he should come home; he called her again later on the day he was arrested or the day before and requested that she wire money to him in Arizona, which she did.  Tr.Vol.VI, at 231-32.  The police officer who arrested Petitioner in Arizona on November 20, 1993, testified that after a <u>Miranda</u> warning was read, Petitioner stated that he was on parole for murder and that his parole officer had given him permission to leave the state of Oklahoma

Thus, even absent Gaddis' testimony concerning Petitioner's admission of guilt, there is independent evidence which, while not overwhelming, corroborates Jackson's eyewitness testimony that he accompanied Petitioner and Cargle to Paisleys' home to get money and that Petitioner shot Richard Paisley and Cargle shot Sharon Paisley. Such corroborating evidence sufficiently connects Petitioner as a principal in the commission of the murders of Richard and Sharon Paisley. Therefore, Petitioner has not demonstrated that the OCCA's ultimate conclusion that there was sufficient evidence to sustain Petitioner's convictions "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court . . . or . . . was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to habeas relief on this claim.

II.    Evidence of Other Crimes - Claim I

Petitioner also challenges an evidentiary ruling of the state trial court, alleging that the admission of evidence of his prior felony conviction for second degree murder rendered his trial arbitrary and fundamentally unfair.

Under Oklahoma Law, evidence of other offenses is not admissible to show a propensity to commit crime. See Oklahoma Evidence Code, Okla. Stat. tit. 12, §2404(A). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Okla. Stat. tit. 12, §2404(B). See also Hale v. Gibson, 227 F.3d 1298, 1321

---

to seek work in Texas. Tr.Vol.VI at 23, 25, 29. Petitioner further stated that when his family called and told him authorities in Oklahoma were seeking him for "new murders," he left Texas and went to Arizona. Tr.Vol.VI at 30-32. Petitioner's parole case manager testified that she had last seen Petitioner on November 2, 1993, and he had not been given permission to leave the state of Oklahoma. Tr.Vol.VI at 41.

(10th Cir. 2000).  At trial, and pursuant to a prior notice of intent to introduce evidence of a prior crime, the State sought to introduce evidence of Petitioner's prior conviction for second degree murder under the common "plan" or scheme exception, as allowed under Okla. Stat. tit. 12, §2404(B), and the trial court admitted the evidence over defense counsel's objection.  Tr.Vol.I at 170-71; Tr.Vol.III at 138, 143-144; Tr. Vol.VI at 96-98.[23] On appeal, the OCCA found the admission of the evidence of the 1985 homicide was improper under state law, concluding that "the evidence did not show a method of operation so distinctive or highly peculiar as to demonstrate a plan common to both crimes." Response, Ex. D. at 3.[24]  However, citing its decision in Blades v. State, 619 P.2d 875, 879 (Okla. Crim. App. 1979) the Court held that the error did not provide a basis for reversal, based on its finding that "due to the strong evidence of [Petitioner's] guilt and the trial court's verbal and written instruction to the jury regarding the limited use of other crimes, admission of this evidence could not have contributed to the finding of guilt." Id.[25]

---

[23]Based on the trial court's pre-trial ruling allowing the admission of evidence of Petitioner's prior second degree murder conviction, defense counsel referred to the prior conviction in voir dire, both defense counsel and prosecution referred to the prior conviction in opening statements, and pursuant to a stipulation the Judgment and Sentence of Petitioner's prior conviction in CRF-85-6466 was admitted during the first stage of trial.  Tr.Vol.VI at 110.

[24]The Court based its conclusion on the following findings:
The evidence showed only that on both occasions, [Petitioner], accompanied by at least one other person, armed himself and went to the home of a marijuana dealer where he had previously purchased marijuana which he determined was no good. After demanding return of the purchase price, [Petitioner] shot the dealer in the chest. [Petitioner] then left the premises, stealing a VCR.  The State's own witness, Detective Cook, admitted that the 1985 homicide and the Paisley murders were not connected, that homicides involving drug transactions are not unusual and that the circumstances of both the 1985 murder and the Paisley murders were not highly peculiar methods of operation.
Response, Ex. D at 3.

[25]In a dissenting opinion, Judge Lane agreed the admission of the prior murder conviction was error, but disagreed that the admission of the evidence was harmless error, stating that he could not find beyond a reasonable doubt that the evidence of Petitioner's prior conviction for second degree murder did not wrongfully induce the jury to find Petitioner guilty.  Response, Ex. D.

Petitioner argues that the OCCA's decision that the introduction of such evidence was harmless error denied him of a constitutionally fair trial. Specifically, Petitioner argues that his right to due process was violated because the characterization of Petitioner as a prior murderer maximized the prejudice flowing from the other crimes evidence and raised a presumption of guilt in the minds of the jury. He further argues that the error in allowing such evidence was not harmless because the State took advantage of the evidence, comparing the similarities between the Paisleys' murders and the murder to which Petitioner plead guilty in 1986.

Petitioner recognizes that to the extent he argues that the admission of other crimes evidence involves only an error of state law, habeas corpus relief is not available. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (habeas corpus relief will not be granted for errors of state law). The relevant question is whether admission of the evidence violated Petitioner's federal constitutional rights. Id. at 68. "[S]tate evidentiary determinations ordinarily do not present federal constitutional issues." Romano, 239 F.3d at 1166 (noting Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts")(citing Crane v. Kentucky, 476 U.S. 683, 689 (1986)). Habeas relief is warranted only where the petitioner demonstrates that the state court's evidentiary ruling was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir.) (internal quotation omitted), cert. denied, 531 U.S. 938 (2000)). Thus, the Tenth Circuit will not "'disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law.'"

Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir.)(quoting Hopkinson v. Shillinger, 866 F.2d 1185, 1197 (10th Cir. 1989)), cert. denied, 525 U.S. 933 (1998).

The OCCA found that the admission of evidence of Petitioner's prior conviction was error under state law, and record shows that the prosecutor in several instances referred to the similarities of the facts between Petitioner's prior conviction and the Paisley murders.  However, the OCCA found no reversible error, and following an independent review of the entire record, the undersigned cannot find that the evidence of Petitioner's prior second degree murder conviction deprived him of a fair trial. The record confirms the OCCA's finding that the trial court issued "verbal and written limiting instructions to the jury regarding the limited use of evidence of other crimes."  Response, Ex. D at 3; see also Tr.Vol.VI at 99.  Moreover, as previously discussed, notwithstanding the post-trial recantation of testimony by Mark Gaddis, Christopher Todd Jackson presented eyewitness testimony regarding Petitioner's participation in the murders of Richard and Sharon Paisley, and his testimony, even if considered as that of an accomplice, was independently corroborated by substantial evidence supporting Petitioner's conviction.  Additionally, as evidence of Petitioner's flight, the jury was properly presented with Petitioner's voluntary statement to the arresting officer in Arizona that he had been released on parole in 1991 for a murder conviction and had allegedly been given permission to leave the state of Oklahoma.  Tr.Vol.VI at 31-32.  Therefore, in light of the entire record, the undersigned finds that the evidence of the Petitioner's prior crime was not so unduly prejudicial as to render his trial fundamentally unfair.[26] See Scrivner, 68 F.3d at 1239-40 (no constitutional

---

[26]While Petitioner principally argues that the admission of the other crimes evidence rendered his trial fundamentally unfair, he also asserts that the evidence violated his right to due process.  Petitioner's Brief at 11. Although the OCCA found no reversible error under state law, the Court did not state whether

error where government witness's testimony concerning defendant's other crimes was unsolicited).

Thus, the undersigned finds that the admission of evidence of Petitioner's prior felony conviction did not render his trial fundamentally unfair in violation of his constitutional rights.  Accordingly, Petitioner has failed to show that the OCCA's determination that any error in the admission of such evidence did not influence the verdict and therefore did not merit reversal is not contrary to, nor an unreasonable application of Supreme Court law.  28 U.S.C. §2254(d)(1).  Accordingly, the undersigned recommends that habeas relief be denied on this claim.

## RECOMMENDATION

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for a writ of habeas corpus be denied.  Petitioner is advised of his right to object to this Report and Recommendation by the _14_ day of _March_, 2002, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The objections should be filed with the Clerk of this Court.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir.

---

it conducted a harmless error analysis.  However, even if this Court were to consider the admission of the evidence a constitutional error, habeas relief could only be granted if the trial error "had substantial and injurious effect or influence in determining the jury's verdict."  O'Neal v. McAninch, 513 U.S. 432 (1995); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Kotteakos v. United States, 328 U.S. 750, 776 (1946).  For the reasons discussed above, the undersigned does not have a "grave doubt" that the admission of the other crimes evidence affected the determination of guilt because of the substantial independent evidence at trial.  O'Neal, 513 U.S. at 436.

1991).   This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 27 day of February 2002.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE